Complainant filed a bill in this court against the Public Service Electric and Gas Company, the Holland Company and one Fairhand. He seeks relief from a contract made with Fairhand by him for the sale of about one hundred and sixty-eight acres of land in Chatham and from a deed by which he made conveyance. Complainant sold the property to Fairhand for $139,000 and took back a mortgage for $124,000. Fairhand thereafter conveyed a right of way through the property to the Holland Company which is the holding company for Public Service. This right of way is to be used for the high power transmission lines of Public Service.
The final contract between complainant and Fairhand contains this clause:
"The party of the first part hereby agrees that twenty acres of the land herein contracted for shall not be included in the purchase-money mortgage hereinafter mentioned, said twenty acres to be selected by the party of the second part and specifically designated by said party of the second part at least one week prior to the time set for the closing of title as herein specified, provided, however, that said twenty acres shall not include more than two hundred and fifty feet of street frontage on any one side of Long Hill road or River road hereinabove mentioned." This tract was subsequently, with the consent of complainant, excluded from the purchase-money mortgage. It was acquired by the Holland Company. The complainant is a business man of wide experience, accustomed to deal with large affairs.
Complainant charges that he was fraudulently induced by the agents of Public Service (I shall so designate hereafter *Page 104 
Public Service Electric and Gas Company and the Holland Company) to part with his property for a purpose for which, had he known, he never would have consented. The first question to be determined therefore, is whether agents of Public Service participated in, or in the company's name engineered the sale. The department of Public Service having charge of securing the rights of way for the high power transmission lines was, and is, under the general supervision of Mr. George Barker. Next to him is Mr. Harry L. Saunders, and under him again are a number of "field representatives." It is admitted that Mr. Saunders is a right of way engineer. His duties were to ascertain the names of the owners, the valuation at which they held the property, the value of surrounding properties and generally to find for Mr. Barker all information along these lines. Also within limits to be determined upon by Mr. Barker, he was authorized to make purchases of lands. Among the "field representatives" was one Rene F. Erkins. This man, complainant insists, as agent of Public Service fraudulently induced him to part with his property. What were his powers and duties? The record, which is undisputed, discloses that he is a field man under Harry L. Saunders, engineer of rights of way. In reply to the question "What were his powers and duties?" the answer which stands without contradiction is "He had no powers." His duties were "to go into the field and to interview owners to secure from them their asking prices in the event that we had the map, and he was working on a definite stretch of line to secure asking prices which they wanted for the right of way. He was to report this back to me and carry my message back to the property owner. You might call them field scouts or investigators or representatives. He was more or less my mouthpiece in working the field as we were working with a thousand property owners and it was impossible for me to see each one of them personally. I had to have these men." This is the testimony of Mr. Saunders, Erkins' immediate superior. There is no testimony that would justify the conclusion that Fairhand was the agent of Public Service. It is not contended that Erkins and Fairhand led complainant to believe that they were acting for Public Service. On the contrary, *Page 105 
Mr. Nicholson says he thought they were representing themselves.
The sole question therefore is were these men the actual agents of Public Service for the purpose of acquiring rights of way? I do not think they were. The testimony I have summarized clearly shows they had no power to buy anything — certainly not a tract of one hundred and sixty-eight acres.
I shall, therefore, deny the prayer of the bill that the contract and deed be set aside, and shall also deny the prayer that Public Service assume the mortgage.
Furthermore, I cannot see that any fraud was perpetrated on complainant by anyone. He is a man of wide business experience, at one time president of a very large manufacturing concern. He desired to sell his homestead and to that end consulted a man named Shea and "put my house where I was living with him for sale; and of course he knew I had this acreage." He then specifically says that Shea was his agent for the sale of this property. Shea brought Erkins to Mr. Nicholson and they tried to persuade him to sell twenty acres. He consulted his counsel and refused to do so. These negotiations fell through and complainant says he considered himself "completely out of the picture." Sometime afterwards his agent Shea again approached him and told him he could produce a purchaser for the whole tract. He brought Mr. Erkins to see Mr. Nicholson, terms were arranged and the contract was signed in the office of Mr. Nicholson's solicitors.
The purchaser was to be Fairhand and Fairhand took title. Nicholson says he understood he was selling to Fairhand, but his personal impression was that Erkins and Shea were in the deal. It is significant to note that Nicholson says Erkins spoke to him "of his high power organization, what they would do — different times referred to it. One time he spoke of sending out two of his surveyors." But there is no evidence that Nicholson ever told the purchaser that he objected to a right of way for high power transmission. The description for the twenty-acre exception to be inserted in the purchase-money mortgage was sent to Mr. Nicholson's attorneys who prepared the instrument. *Page 106 
Nicholson could have restricted the property against use for high power transmission. Certainly he could have inquired the purpose of excepting from the mortgage a strip of land running directly through it which, while having an area of twenty acres, had a frontage of less than two hundred feet. It seems to me that it should have been apparent to almost any one that such a strip could not be used to any advantage for the development of building sites, and that it clearly indicated some sort of right of way.
There is evidence that Fairhand, after he had conveyed the strip to Public Service for $30,000, made at least some effort to develop the property, but could not make the development a success.
From a careful reading of all the testimony, I believe the situation to have been this. Fairhand thought he could get enough money from the sale of the right of way to Public Service to develop and sell the remainder at a profit. In this he failed, either through lack of energetic effort or the drop in the real estate market. I cannot see that he or anyone practiced any fraud on complainant. As I have said he is a man of wide business experience and had his own real estate agent and his own lawyer to guide him, and could have investigated thoroughly before agreeing to the transaction, and could and should have made inquiries as to the reason for excepting from the purchase-money mortgage a narrow strip running straight through the property and practically dividing it in half.
This case was instituted in large measure as the result of allegations and representations of one Harold P. Leshins.
He is a discharged and discredited employe of Public Service. He evidently endeavored to be revenged on his former employers by preparing a suit which would injure, not only their finances, but their reputation for fair dealing. He went to Mr. Nicholson and procured a contract by which he was to receive $10,000 if this case were won. He endeavored to procure witnesses for cash, but only succeeded in part. He intimates that Erkins was to have told a different story, but changed his testimony. Erkins denies this and I believe him. The whole attitude of this man, his evident spite against his *Page 107 
employers, and his constant demand for considerable sums of money make his testimony utterly unworthy of belief. He attempted to betray those he had formerly served and distorted the facts and interjected fiction for gain and for vengeance.
I will advise a decree dismissing the bill except as to the foreclosure of the mortgage.
I will direct that the foreclosure be proceeded with.